We will hear argument in Pierre v. Attorney General. I hope we haven't scared the law students to death by now. Because we really can be very nice. Yes sir. May it please the court, my name is Oscar Flores. I'm a law student at Florida International College of Law. And I represent Petitioner Paul Pierre. Your Honor, this case should be remanded because the immigration judge... Would you like to reserve any rebuttal time? Three minutes, perhaps? Yes, Your Honor. Your Honor, this case should be remanded because the immigration judge and the BIA failed to consider the basis of Paul Pierre's claims. Would you talk into the microphone, keep your voice up, and don't bother reading, just tell us what you want to tell us. Your Honor, this court should remand this case because the immigration judge and the BIA failed to adequately consider Paul Pierre's claims. Basically, his claim was that his severe medical condition made him uniquely vulnerable to the horrible conditions... Why should we remand it? The immigration judge stated in his opinion that the medical condition was not relevant in Paul Pierre's claim, not inaccurate. He did not have the guidance of this court to do the review of it, which showed that it could lead to the inference of fining. So you want us to remand it for the immigration judge to consider the LeVirate case? Is that so? Yes, Your Honor. Consider the relevancy, the legal to the medical claim that Paul Pierre presented in his severe medical condition made him uniquely vulnerable to the conditions. But he didn't really argue before the agency that there was a specific intent to inflict severe pain and suffering on him. And indeed, his primary argument was not even prison so much as it was just being in the general population in Haiti where they are unable, in his view, to take care of his medical needs. And I suppose what really brings us here today is the LeVirate case. And I think Judge Barth suggested that what you probably would be pleased with and are seeking here is the reconsideration by the agency in light of LeVirate. Is that correct? Yes, Your Honor. Is it your position that the medical condition of Mr. Pierre, if he were deported to Haiti, that the Haitian officials in their inaction or their inability to act would be tantamount to torture? Your Honor, their intentional placing him in a detention, knowing that those conditions are such, would be tantamount to torture. Now suppose they didn't have the facilities to deal with Mr. Pierre. He is afflicted how? You didn't tell us. He has a esophageal dysphagia. He has a plasmic disease. And it has to be cleaned every so often and he has to be fed through a tube, right? Correct. Now suppose they don't have the facilities to do that because they're either, they haven't been provided with those facilities or there is no money to buy them. And there is nobody there who is trained to undertake that kind of feeding or cleaning. Would that be tantamount to torture if they had to neglect his feeding and cleaning? Yes, Your Honor. Knowing with the virtual certainty of the outcome of those actions, it would be like he could have died. But that's not a specific intent as Judge Barry just referred to. Isn't specific intent an element of torture? Well, Your Honor, specific intent as required as torture, there were certain facts. And those would be facts that would be relevant to the fact finder to determine whether or not they reached the level to find specific intent. And that's what we're asking that the immigration judge Bailey do. Well, wait a minute. It's specific intent. Don't you specifically desire a specific result? Meaning that you want the other person to suffer serious pain and suffering. Isn't that what torture means? Yes, Your Honor. But also the natural and probable consequences of your actions. You place someone in those conditions. Well, that's a general intent. I'm not sure that's a specific intent. Your specific intent means that you want that person to undergo suffering. Serious suffering. And as Judge Garth was just saying, does placement in a jail mean that you specifically want that person to suffer? Well, in the guidance of the viral, it does show that the knowledge, the willful blindness to those consequences, plus the virtual certainty of those consequences could lead a fact finder. Mr. Flores, why is it willful blindness if a jailer says, Paul, that's his first name, Paul, we would love to help you, but we don't have the facilities to do it. The Haitian government hasn't given us the money. We don't have any medical people here. We just can't serve you in any way. And we're sorry that we're going to watch you die, but, heck, we can't help it. Now, is that a specific intent to torture? Your Honor, it could be better. That's not what you would expect, let's say, from a Nazi guillotineer or from the KGB in Russia, that kind of approach where they say, we'd love to help you or anything, but we're just going to have to put your fingernails out. But, Your Honor, it's the unique vulnerability of Paul Pierre that makes it different as opposed to just generally putting everybody in those same conditions. He is uniquely vulnerable. It's obvious that he's uniquely vulnerable, so placing him knowing with virtual certainty that that is going to be the outcome. But that's his condition. Don't you focus on what the jail folks are going to do as opposed to his own medical condition? Yes, Your Honor, but they're— I mean, specific intent is from the perspective of the jailer, not from the perspective of the person in jail. Well, together, those facts should be relevant, Your Honor, knowingly placing him in those conditions. They're intentionally placing him in these facilities, knowing what's going to happen because of his unique vulnerability. It separates him from the abuse matter of J.E. cases, showing that he does have at least a valid claim that was not considered by the agitation. That's basically what— See, in the way you present this, in very tragic circumstances, there's no doubt about that. And perhaps someone who is worthy of humanitarian consideration, I'm not sure that we can do that, but adopting your theory, Haiti is not the only bad jail in the world. There are quite a few other places like that. But if we accept your position, everyone who has a serious medical condition that is going to be placed in a jail where they don't have the resources to take care of that person would qualify for deferral of deportation. Well, Your Honor, that would be a fact-specific inquiry done by the agency, which would factor in the severity of the medical condition, but would not be— But you see, your theory here is that the jailers look the other way. They are willfully blind to the medical condition. How does that amount to torture? Again, Your Honor, the position would be that their willful blindness and placing them in those conditions with the virtual surgery was going to be the natural and probable outcome or consequences of their actions. A fact-finder could infer specific intent based on those facts. All right, I think we've taken—given you a lot of time, and we'll move to the next— Thank you, Your Honor. Ms. Sharpe. Good morning, Your Honor. This is Col. Gretchen Sharpe here. Thank you so much, Your Honor, for being in my office. Today, moving directly to the heart of the matter of specific intent, our position is simply— I think the position consistent and demanded by us here is that eggshell characteristics of an African victim are relevant to the fact-finder's man's way of inquiring. If I may take a moment to illustrate this position. Well, now, Ms. Sharpe, I'm going to interrupt you because I want to build on what Judge Fuentes was asking your colleague. Do I understand your position is that if the individual in question, for instance, was a diabetic and was being sent back to Haiti where he was going to be jailed because of their policy of people that have left Haiti to come to the United States, and the officials in Haiti had no insulin in which to administer to him, that that would be considered torture if they put him in prison and because of a lack of that medication, he were to die? If I may, the fact-finder should consider that case, and it is a harder case in our case because it's not as virtually certain as people's daughters and the students here in this country. Our position is simply that there should be no constraint on the fact-finder on what happened in this case. The fact-finder couldn't consider or make an inference on putting someone so sick in prison. Well, the fact-finder will be constrained by Auguste and LaVeyra. And LaVeyra dictates remand. LaVeyra says severe pain is not a possible consequence. That may result from physical abuse. But the question is, do the jail authorities desire that result? Is that what they specifically wanted to happen? LaVeyra surprised me a little bit because there was more emphasis on the HIV-positive status than there was on the fact that LaVeyra was an above-the-knee amputee. Now, I can see it to be an easier case in the sense where you have an apparent disability such as that. How are the Haitian authorities to know, for example, that a deportee coming back is a diabetic or HIV-positive or has TB or cancer? No, but I'm saying, are you saying only people with obvious... But do the Haitian authorities, the guard, the ward, do they receive medical records when a deportee is received? It does have the obviousness of the feeding tube hanging out of the bar. Client is a relevant fact. It makes our case easier to make that impact. Does everyone with a serious medical condition like this qualify for deferral of removal? In other words, let's say a very serious cancer patient who would die without the necessary medication and surely will not receive that medication in Haiti. That person automatically qualified for deferral? There's no automatic qualification. Do that again. Under the Real ID Act, this court has limited jurisdiction. You cannot say for sure whether there is a specific intent toward a particular patient or a special client. All you're doing and all the fear is is laying out the rules governing that. And all the fear does is say, yes, it can be relevant to a fact finder, the obvious medical condition, knowing the virtual certainty that the patient will die. That is a relevant fact in the same way it was made. But what evidence of intent is there in the case that's been posited by Judge Buentes and Judge Barry where somebody has a disease that can be fatal without care but where is the evidence of intent on the part of the jailers, on the part of the warden of the prison? Levira doesn't say that intent no longer applies. Levira says that building on August, it says, oh, yes, you've got to have intent to torture. And in the case of the Levira prisoner, there is an intent. Now, that's been questioned, of course, by the Second Circuit where they claim that there is a tension between the two opinions in the Third Circuit, but we don't have to worry about the Second Circuit, do we? You do not. I don't think it's actually in the footnote. Yeah, but what do you do about the intent? Tell me that. Well, we believe that our case is exactly on all four squares of Levira. What Levira says is that because two unique aspects belong to our improvement of intent, the first is that demonstrating improvement of intent is not necessarily an influential endeavor. We're never going to have a signed statement from a jailer. But you can say, at least one can, I think, make an argument that where a petitioner has one leg or no legs, that a jailer seeing him come in and putting him into general population, to make the argument, intends that there be serious pain and suffering. Intends to inflict serious pain and suffering. Now, Judge Garth's question is a good one. What if there's no place else? There's no money. There's no other place to put him. How do you distinguish the there's no other place he can go? Let me, if I could, make two points in response to that in order to address my question. First of all, what argument is that? The feeding tube, that's obviously called... Where is the feeding tube? It's a matter of interest. Right here. So why is that obvious? That's under clothing. Well, he will show it. He showed it to a pilot who had a deployment coming. So it would be called obvious. And so are we, in a sense, more egregious in the fact that there is a key case? More of the whole thing is that the case should be sent back to that past finding endeavor that this court cannot engage in. And if I may, as to the second question, the evidence is, if I understand it correctly, what's the evidence of intent? Well, the evidence is an inference based on medical conditions, unique characteristics. If you place a baby in the Everglades, and you ask a reporter, and the baby dies, can you confirm that the defendant intends the baby to die from the fact that that was a baby not an adult? No. And we're just saying the same thing here, that it's not necessarily the policy. They're out, not just the policy, but something more, which is that intent of the procedure is not a supplement. We're just being asked to ask a baby reporter on that question, not have the baby die. As this old-fashioned judge did. He said, I cannot consider it medical conditions. He can, as a matter of law, consider medical conditions. All that. Is it because the certainty of death that he should be considered for deferral, or is it because he would suffer as a result of the incarceration? We can say both. That he will suffer because he was able to starve to death. And only because he was able to do that. Ensure. If he could starve to death, severe punishment, and then die. And Ms. Sharpless, if we were to do what Mr. Flores recommends, which is to remand, and you were faced with this barrage of questions that you were here this morning, you would have to make the same distinction before the immigration judge. Absolutely. All the questions you've heard, questions you're raising now, you will have to face them. And if you don't know that. Could I point out one other thing to you, which is slightly off point, that you abandoned your second and third claims having to do with the single member of the Board of Immigration. We recently have decided the case. It's called Pervegan versus Gonzalez. It appears in 448 Fed Second, which says that the Board of Immigration's determination to employ a single member review is subject to our judicial review. And I thought I would call it to your attention, not that it affects the import of your argument here, but so that you may use it for future purposes. Can I address one more question? Is it your view that the jail authorities, whoever they may be in Haiti, put individuals such as your client in jail knowing that he is going to suffer medically and therefore he's going to die? Or is your position that there is a willful blindness on their part? We think that a willful blindness is supported by the knowledge about who you have to go with, what you have to do in Haiti, and that they have actual knowledge about who you have to go with. Penalty knowledge, but actual knowledge. But the strength of your case is that you can infer specific intent from the jail services. Yes. Thank you. One more law student? Or not? Your Honors, the next law student will be Arnie. Oh, all right. Thank you. Mr. Downheimer. Good morning. May it please the Court. David Downheimer on behalf of the respondents. In this case, a petitioner is removable as a criminal alien based on his conviction for attempted murder. Because of that conviction, he's removable as an aggravated felon, and this Court's jurisdiction is limited to the review of constitutional issues and issues of law. Therefore, Judge Garza mentioned the pervegance case. I think it may be distinguishable in these matters because this case is subject to that further bar that we do on the criminal alien. Rather than the discretionary bar that we do. You've got a motion to dismiss the pending motion. Are you oppressing it? Your Honor, only insofar as the petitioner has failed to raise a meritorious issue of law or a constitutional claim, would we request the Court to dismiss the petition. As it appears that they've raised an issue of law with respect to the petition. Yeah, I think they have. What do we do with the suggestion that we remand this case in light of the more recent case written by Judge Rendell of this Court in La Vaira? Don't you think that that recommendation has merit to it? Because certainly the immigration judge never dealt with La Vaira. It wasn't decided at the time that the immigration judge and the BIA determined that Mr. Pierre should be deported. I understand, Your Honor. And I understand the Court's caution in this matter. However, I don't believe that a remand would be required under the review of this case. Because this case does not present the same claim that was raised in La Vaira. In La Vaira, the petitioner actually claimed that he would be singled out for abuse and mistreatment by the guards based upon his HIV status and his other characteristics. In this case, no such claim was made. And he, for the immigration judge, the claim that he put forth.  never mind the claim that was made. What about the facts that are on the ground? When this prisoner gets over to Haiti, and there are four jailers there, and each one of the jailers says, hey, I don't want anything to do with this fellow. I don't know how to deal with this. He's got to be fed through a tube. He's got to have a tube cleansed. I don't know how to do that thing, even if I wanted to do it. And I'm not too sure that I want to, because I don't think it's my obligation. Isn't that the same position that Mr. LaViro was in, who was an amputee? Now, whether they claimed it or they didn't claim it, we have that before us, and we can't ignore it. I think it's different than the position that LaViro claimed. He claimed that he would be specifically targeted for severe pain and other characteristics. Well, suppose this chap is not targeted. I've heard your friends on the other side of the bench say that this is tantamount to torture, whether it's targeted or not, because he's going to die without this type of facility that's afforded to him, and that these people aren't going to be able to do it, and that you don't do things like that. You don't deliberately assign somebody to death. And that's pretty much the way LaViro comes out. I'm not sure LaViro should be read that broadly, Your Honor. I understand the court's caution in respect to returning an alien into the situation. However, his forum for raising that type of a humanitarian claim would be for a deferred action of removal. My understanding is that the policy of the Department of Homeland Security is to act upon those requests only after an individual has been determined to be removable. And I'm not aware of any request that has been processed to the NHS. I'm sorry, what kind of request is that? A request for deferred action on his order of removal. He would be asking simply as a matter of discretion to the Department of Homeland Security not to remove him to his home country based upon his medical disability. And the potential that he would face could be a consequence. So even if we send this case back and the IJ makes the same finding and the BIA approves that finding, he can still be removed? He could be removed, yes, Your Honor. If he were found to be removable again. I'm not sure I understand that. Of course, if he's granted deferral based on the Convention Against Torture, he cannot be removed. Oh, no. It's a separate matter, Your Honor. One would be a deferred action on the order of removal. It would be up to the discretion of the Department of Homeland Security. And that's specifically to address issues such as this where the humanitarian concern doesn't fall within the letter of the law with respect to deferred, mandatory deferred removal under the Convention Against Torture. I have looked but have not found any case. And maybe you can help me. Has any court anywhere concluded that withholding of medical treatment constitutes torture under the convention? I'm not aware of such a case, Your Honor. The closest case would probably be the Mid-Circuit case. I would point out, though, that Petitioner's case wouldn't be so limited. If the court were to adopt Petitioner's position here, it appears that they're asking that he would be entitled to deferred removal under the Convention Against Torture,  even if he were to simply remove to Haiti. And there was no evidence that he was going to be detained because, as he claimed before the immigration court, the entire country of Haiti would be able to do that. That was his primary position before the – I agree with you on that. That was your position in the letter. That was his primary position before the agency. He was also pro se back then. And I guess then he did get counsel. But he stumbled his way into the – finally, he said in the prison, you know, if I'm detained, he said when he got out, when he was deported, he'd go home. He'd be taken home. Right. That was his first – I believe that was upon questioning by his counsel. Yeah, but that's not accurate, is it? I mean, everyone – isn't it a Haitian policy that every person in this country who is convicted and deported has to go into detention? The evidence in this record doesn't make that clear. It has been shown in prior cases that this court has heard that that is the general policy. If this case were to be remanded, I believe that would be an issue that would have to be explored further because there may be an issue as to whether they would do so given his severe detention. See, I have a – one of my problems in this area is that, as I suggested earlier, when someone's disability is apparent, at least it's somewhat easier to presume knowledge on behalf of the Haitian authorities. They see this person coming and it's so apparent that he's disabled. But what about people who are equally disabled but it is not so apparent, the diabetic, the cancer patient? How would knowledge be – how would the authorities have knowledge of the physical condition of those persons? Are there medical records that go with them? I'm not sure whether there are medical records that go with them. And I believe that's – you raise the point that it's caution, of course, in broadening the scope of the convention and, of course, because the convention – So it's equally torture against a cancer patient, but how are they to know that the person is a cancer patient? So it's more difficult to show the specific intent, correct? Well, I think it's important to separate knowledge from the specific intent, because in Auguste, this court found that even actual knowledge of the placement of detainees in the Haitian prisons, that he would suffer severe – But that was the economic – that was for economic reasons. Auguste said it's not for us to – just by treating everybody alike, putting them in where there's no money in Haiti to do a better job. It's not what is required under – specific intent required under the Act. And that, we would argue, same case in this matter. It's an economic issue, not one of specific intent. There is no allegation there below that. Well, except that you could say that this petitioner and La Vaira were particularly vulnerable, and their vulnerability was apparent to all who would see. There is that distinction. And I think that would go to the knowledge of that individual. You know, it's a very tough decision, because you know the guy's going to die if he goes back to Haiti. You don't offer very much. As I understand it, Mr. Pierre was put in jail, not after his attempted – the crime that he committed. He got a 20-year sentence, right? And he was in jail in the United States. I don't know where. Do you know where? Because I'm curious, how long did he spend in jail? Ten years? No, I think he's out. When was he let out? How long? Ten years, Your Honor, but I'm not sure of that. Well, there was a ten-year period, I think, when they said he might be eligible for parole. And that's why I think he was out in ten years, but maybe not. How did they handle it in the United States? Because he had the same affliction, did he not? He had imbibed the battery acid after he had attempted to kill the young lady, and therefore all of his tubes were eroded. He had to be fed through the tube and have his tube cleansed. How did they handle it? I'm not sure, Your Honor. It is a record that they changed the tube once a month, but he was not permitted to be in general population in the prison. They kept him in a separate area because he required daily visits by a nurse or doctor in the prison. So I think that is a record. Well, that wouldn't be tantamount to torture, would it? That would not be tantamount to torture, would it? No. What's the success rate on these applications for deferral of an order of removal made to DHS? Would you in any way have known? I do not know. Is there a procedure? Does the government have a procedure  Yes, Your Honor. They requested from, I believe, the local district council, and then that district council passed on that request. I'm not sure if there's any rightful review. Is there any opportunity on the applications to submit evidence, or is it just a question of submitting an application? I believe they would submit an entire packet of information to explain in particular circumstances why, as a non-humanitarian basis, it's not an order of removal. So that if we were to do an opinion for whatever reason, saying, well, you really raised it below in such specific terms and we have problems with it, but it certainly seems in a tragic, egregious case, that would probably go in the records, wouldn't it? I would imagine they would include that. Would the humanitarian avenue that you described be forfeited if this matter were remanded? No, Your Honor. In other words, if we did remand it, and the immigration judge said, well, they can take as good care of him, in my opinion, the judge's opinion, as he was taken care of when he was in the Monmouth County prison, let him go to Haiti. He could still, nevertheless, ask for humanitarian relief from the Department of Homeland Security, could he not? And Mr. Chertoff possibly might undertake to keep him here. Yes, Your Honor. I understand the question. I believe if the facts came out that he either wouldn't be detained upon removal or would provide medical care, he could still request the program of action. It may make it less likely to be remanded, but that's the understanding. You have handled this case very responsibly for the government, don't you think? Thank you, Your Honor. You're welcome. May it please the Court. My name is Jalal Shahada, and I'm a law student at Ford International University, and I represent the petitioner, Paul Pierre. Your Honors, first I'd like to point out that opposing counsel mentioned Levira as standing for the petitioner being singled out. How both of the reasoning in Levira was related to his certainty of his suffering, severe pain and suffering. I'd also like to point out that in August, he said that knowledge is not enough. And August does say that knowledge that severe pain and suffering may result is not enough. Not that knowledge of virtually certain severe pain and suffering is not enough. And we believe that the finder of fact, as stated in Levira, makes a necessary inferential endeavor in determining whether that is enough. Did the immigration judge in this case address August and conclude that Pierre had not shown any specific intent to be tortured and deny the CAT claim? Yes, Your Honor. The court did cite to August and did mention a specific intent standard. However, the most natural reading of the case would suggest that the court looked at Paul Pierre's claim as being one of discretionary relief. And Your Honor, to the extent that the court did mention August, the court gave no reasoning why his case didn't satisfy the requirements of specific intent and didn't even consider... But he didn't really make that argument before the immigration court, the specific intent argument. You know, August had just been decided to conclude before that time, and he hadn't really made that argument. Well, Your Honor, it shouldn't clearly state that that would be enough of a specific intent, but he did state that his medical condition and putting him inside the Haitian jails would be tantamount to torture. And the immigration judge should have at least considered whether that's enough. Instead, the immigration judge says that he can't consider his medical condition. Your Honor, in the case, it's undisputed that there was a severe medical condition, that he can't feed except through a tube that's connected directly to his intestine. No, he didn't say he can't. He just said the medical condition is not enough. You need more than a serious... And he was sympathetic to the medical condition, but that without more is not enough. That's what he said. Your Honor, the court... And that's what we said in our case. Yes. And, Your Honor, on the record of page 31 in his decision, the court says that if he was permitted to consider the entities in the case, he would, but that he cannot grant relief under the Convention against Torture because of his medical relief. And under La Vaira, the court says that having the medical condition and the certainty of his claim is a legally available and legally deniable claim that should have been considered by the IJ. And the court didn't even consider that in the case. Tell me something. Footnote 13 in the La Vaira case indicates that there are changed conditions that were not considered under La Vaira. Do you know what those changed conditions in Haiti were? No, Your Honor, I do not, but co-counsel Rebecca Sharpless and her were being addressed by us. Except she already did address us. In her rebuttal, she had reserved three minutes for... No, no, no. You're the rebuttal. That's what Ms. Sharpless said. When I asked you before, I was told that you're doing the rebuttal. Two minutes of the rebuttal. We're given five minutes. Well, your red light is on. Thank you, Your Honor. Is there certainty that Pierre is going back to jail as opposed to back to the general population? He seems to think he's going back to the general population. The general population in Haiti? As the evidence shows, he said that he will be sent back to the Haitian jails and that the court never considered that as being an opportunity. Ms. Sharpless, you have what? One minute? I'm sorry for the confusion. I understood that I reserved three minutes. Then I ask you, we don't have two rebuttals. I apologize. I understood you were shorting five minutes. Ms. Sharpless. With regard to the teaser that the government put out about deferred action, that is an obstacle to statutory request that was also mentioned in the reader's decision, that no 6th, 10th, or 5th grade before the very end of the road, which in my experience, in my 12th grade experience, has never been granted, it should not play into the court's consideration of distinction of merit. The court doesn't have to grapple with whether there needs to be a hearing on the revered issue of whether influence of the 10th and B found in the case. There have been unpublished decisions granting distinguishing matter of jail units in cases involving people with vulnerable characteristics like our client. There have been ways in which the agency has helped us in that. What type of cases are those? Circuit? We cannot cite unlawful and unpublished cases. We can take a peek. Regarding the cancer patient issue, I think that it is relevant that the condition those respondents have to prove that there's medical papers that they live in other lives as well. Regarding, we did posit the life support issue in our letter which I did want to actually sharpen because it explains what's going on here. Let's take a more extreme example. At a certain point, the fact finder can say, really, it's not just an implementation of the policy that's going on. There's an intent here, proof that's here, and a settlement. We're just saying we have the right to have our say in court. That our case, is like the likes of the patient. Thank you. I thank the law students. We gave you a hard time. That's what law is all about. We were there where you are once, and we survived. You did a very, very good job, and I think you're going to be very, very successful. I hope you're very happy in this profession. We're very happy to have had you. Thank you. We'll take the case under advice. Alright, we'll do weeks free. We'll do weeks free. The interesting thing, we've had two immigration cases this morning, and the two men involved have been in this country a total of 55 years. Quite interesting when you add them up. Mr. Campbell's been here for 34 years, and Mr. Pierre's here for 21 years. Relevant to very little, but it stunned me the enormity of the number of years. Alright.